UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIEN MARSHJON MCDOUGLAND,<br><br>    Plaintiff,<br><br>    v.<br><br>J. BELLUOMINI et al.,<br><br>    Defendants. | No. 2:22-cv-2242 DB P<br><br><br><br>ORDER |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that defendants used excessive force against him, denied him medical care, and failed to protect him in violation of his Eight Amendment rights. Before the court is plaintiff's complaint (ECF No. 1), motion to proceed in forma pauperis (ECF No. 11), and motion to appoint counsel (ECF No. 13). For the reasons set forth below, the court will grant the motion to proceed in forma pauperis, deny the motion to appoint counsel, and give plaintiff the option to proceed with the complaint as screened or file an amended complaint.

**MOTION TO PROCEED IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). (See ECF Nos. 2, 5). Accordingly, the request to proceed in forma pauperis will be granted.

////

1

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## SCREENING REQUIREMENT

### I.     Legal Standards for Civil Rights Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227–28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

////

However, in order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trs., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362, 371 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**II.     Allegations of the Complaint**

This action arises out of an incident that occurred on September 14, 2020 while plaintiff was incarcerated at the California Medical Facility. Plaintiff names twelve corrections officers as defendants: J. Belluomini, J. Bargstadt, K. Branion, A. Bunch, D. Castille, C. Dennis, C. McElroy, J. Priest, J. Purtle, J. Strope, A. Sarai, and G. Williams. He also names six medical staff members as defendants: S. Arciga, S. Abraham, V. McBride, A. Reyes, R. Thomas, and Dr. Farhat. Dr. Farhat is a physician, while Arciga, Abraham, McBride, Reyes, and Thomas are nurses. (ECF No. 1 at 4.)

////

////

The complaint states that on September 14, 2020, "a nurse was hurt." (Id. at 5.) A corrections officer, who is not named as a defendant, told responding officers that plaintiff injured the nurse.[1] (Id.) Plaintiff states that, as other corrections officers responded, he lay prone on his bed and "securely restrained." (Id. at 5.) Defendant Williams then "began to twist and bend both plaintiff's wrist and fingers." (Id.) Plaintiff straightened his wrist and made a closed fist, but defendant Williams pulled plaintiff's "right index finger and middle finger out of the clenched fist, while Williams intentionally began bending plaintiff's fingers backwards attempting to break or damage them." (Id.) Unnamed officers then moved plaintiff into an upright position "so his head and torso was [sic] exposed." (Id.) "Officer[s] J. Belluomini, J. Bargstadt, K. Branion, A. Bunch, D. Castille, C. Dennis, C. McElroy, J. Priest, J. Purtle, J. Strope and G. Williams all began to punch plaintiff in the head, face, ear and torso." (Id.) Sergeant A. Sarai was present and witnessed the use of force, but did not intervene. (Id. at 21.)

During the assault, plaintiff "yelled for V. McBride," a medical staff member who was attending to the injured nurse, and asked him to intervene. (Id. at 5–6.) Defendant McBride did not intervene. (Id. at 6.) Plaintiff also states that defendants Arciga, Abraham, McBride, Reyes, Thomas, and Farhat "simply stood at the entrance of the cell and milled around while plaintiff was being assaulted." (Id.) He called out to each of them "by name" but they did not respond or intervene. (Id.)

Defendants stopped striking plaintiff after an unnamed sergeant told them, "[T]here is [sic] nurses watching; let's stop now." (Id.) An officer then said, "[P]ut him on the ground." (Id.) Defendant Strope moved plaintiff to the edge of his bed and pushed him off the bed "with all his force" onto the floor. (Id.) According to plaintiff, Strope "knew plaintiff's medical condition made walking impossible and knew simply tossing him to the floor . . . would cause plaintiff unnecessary injury." (Id.) Plaintiff landed on his chest and hit the side of his face. Strope then yelled, "Stop resisting." (Id.)

---

[1] Plaintiff later filed a grievance alleging that this officer, A. Merrifield, injured the nurse after Merrifield and the nurse "began to argue and disrespect each other." (ECF No. 1 at 23.) Merrifield then allegedly "activated the alarm" and told other officers that plaintiff had assaulted the nurse. (Id.)

4

After the assault, plaintiff thanked Sergeant Sarai for not participating. (Id. at 21.) Sarai allegedly replied, "I really wanted to and it's not over . . . This is only the beginning." (Id.)

Plaintiff states that, as a result of the alleged assault, he suffered "a swollen head, black eye, bruised nose, and swollen right ear," as well as "black track marks to [his] wrists, swelling to [his] torso . . . [and] spranged [sic] right index and middle finger[s] . . .". (Id. at 7.) Plaintiff further claims that defendant Farhat, plaintiff's primary care physician, subsequently refused to examine plaintiff's injuries or send him to a hospital. (Id. at 14.) Defendant Arciga also allegedly "refused to document or treat plaintiff's injuries." (Id.)

The complaint asserts claims of excessive force, deliberate indifference to plaintiff's medical needs, and failure to protect.

### III. Does Plaintiff State Claims Cognizable under § 1983?

**A. Legal Standard – Eighth Amendment**

The Eighth Amendment prohibits "cruel and unusual punishments." Farmer v. Brennan, 511 U.S. 825, 832 (1994). The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105–06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that he objectively suffered a sufficiently serious deprivation and that prison officials subjectively acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298–99 (1991).

**1. Excessive Force**

For Eighth Amendment claims arising out of the use of excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson, 503 U.S. at 7). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8, and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Wilkins, 559 U.S. at 37–38 (citing Hudson, 503 U.S. at 9–10).

### 2. Deliberate Indifference to Medical Needs

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." Id. at 842.

"Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" Jett, 439 F.3d at 1096 (quoting Estelle, 429 U.S. at 1059). To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at

1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett, 439 F.3d at 1096; see also McGuckin, 974 F.2d at 1060. "A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference." Jones v. Marshall, 459 F. Supp. 2d 1002, 1012 (E.D. Cal. 2006) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).

### 3. Failure to Protect

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corrs. Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer, 511 U.S. at 832–33; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." Labatad, 714 F.3d at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citations omitted). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," a plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis, and citations omitted).

Where a prisoner alleges that prison officials failed to protect him by failing to intervene to stop another official's constitutional violation, the prisoner "must allege circumstances showing that these officers had an opportunity to intervene and prevent or curtail the violation

7

(e.g., enough time to observe what was happening and intervene to stop it), but failed to do so.'" Gonzales v. Cate, No. 1:06-cv-1420-AWI-MJS (PC), 2011 WL 1332174, at *3 (E.D. Cal. Apr. 5, 2011) (citing Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995)); Lanier v. City of Fresno, No. CV F 10-1120 LJO SKO, 2010 WL 5113799 (E.D. Cal. Dec. 8, 2010).

### B. Analysis

Plaintiff has stated a cognizable claim against defendants Belluomini, Bargstadt, Branion, Bunch, Castille, Dennis, McElroy, Priest, Purtle, Strope, and Williams for excessive force. Additionally, he has successfully pleaded a cognizable failure-to-intervene claim against defendants Arciga, Abraham, Reyes, Thomas, Farhat, and Sarai for not intervening in the use of force. Plaintiff has failed to state a claim against defendant McBride, or against defendants Farhat and Arciga for deliberate indifference to his medical needs.

#### 1. Excessive Force

According to plaintiff, he was restrained and not resisting when Belluomini, Bargstadt, Branion, Bunch, Castille, Dennis, McElroy, Priest, Purtle, Strope, and Williams entered his cell, manipulated his fingers into painful positions, and struck him in the head and torso. (ECF No. 1 at 5.) They stopped when a sergeant told them, "[T]here is [sic] nurses watching; let's stop now." (Id. at 6.) Defendant Strope then pushed him off his bed and onto the floor, injuring him. (Id. at 5.) Immediately prior to this alleged assault, a corrections officer accused plaintiff of injuring a nurse. (Id.)

Taking the allegations as true, the use of force did not constitute a good-faith effort to maintain or restore order, because plaintiff was already restrained and not resisting when it began. Plaintiff may proceed on his excessive force allegations against defendants Belluomini, Bargstadt, Branion, Bunch, Castille, Dennis, McElroy, Priest, Purtle, Strope, and Williams.

#### 2. Deliberate Indifference to Medical Needs

According to the complaint, defendants Farhat and Arciga witnessed eleven corrections officers use excessive force against plaintiff, which involved blows to his head and torso. (ECF No. 1 at 5.) They subsequently refused to examine, document, or treat plaintiff's injuries, which included "a swollen head, black eye, bruised nose, and swollen right ear," "black track marks to

[his] wrists, swelling to [his] torso . . . [and] spranged [sic] right index and middle finger[s] . . .". (Id. at 7, 14.) Dr. Farhat also allegedly refused to send him to the hospital for treatment. (Id. at 14.) These allegations do not adequately state a denial of medical care claim.

### a. Serious Medical Need

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (quoting McGuckin, 974 F.2d at 1059–60).

Here, plaintiff alleges he suffered from bruising and swelling after the assault. (ECF No. 1 at 7.) He also implies that he suffered mental anguish and required psychological treatment, but does not provide additional information. (Id. at 14.) These allegations are not sufficient to plead a serious medical need. Several courts, including this court, have held that bruising and swelling, without more, do not constitute serious medical needs. See Correa v. Braudrick, No. 1:19-cv-00369 DAD BAK, 2022 WL 2308803, at *10 (E.D. Cal. Jun. 27, 2022) (collecting cases); Rojas v. Brown, No.: 1:17-cv-01514 DAD JLT, 2018 WL 4183269, at *17 (E.D. Cal. Aug. 30, 2018).

### b. Deliberate Indifference

Deliberate indifference requires a showing that prison officials committed "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1906. The court cannot assess whether defendants Farhat and Arciga deliberately ignored a substantial risk of serious harm to plaintiff, because plaintiff has not pleaded sufficient facts to show he experienced a serious medical need.

For these reasons, plaintiff's deliberate indifference claim against defendants Farhat and Arciga fails. Plaintiff will be granted leave to amend his complaint, should he wish to pursue a denial of medical care claim.

////

**2. Failure to Intervene**

Plaintiff claims that the medical staff defendants and Sergeant Sarai witnessed several corrections officers using excessive force against him, but failed to intervene. While plaintiff does not state how long the assault occurred, he claims it was of sufficient duration for him to call out to each of the six medical staff defendants by name. This allegation indicates that it lasted long enough that these defendants could have intervened on plaintiff's behalf.

However, the facts do not support an inference that defendant McBride heard plaintiff's pleas for help or had an opportunity to intervene. According to plaintiff, McBride was tending to the injured nurse when plaintiff yelled to him and the other medical staff defendants for help.

For these reasons, plaintiff has stated a cognizable failure-to-intervene claim against Arciga, Abraham, Reyes, Thomas, Dr. Farhat, and Sergeant Sarai. The court will grant him leave to amend the complaint should he wish to pursue a claim against defendant McBride.

**AMENDING THE COMPLAINT**

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

////

1 In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all prior pleadings are superseded. Any amended complaint should contain all of the allegations related to his claim in this action. If plaintiff wishes to pursue his claims against the defendant, they must be set forth in the amended complaint.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

## MOTION TO APPOINT COUNSEL

Plaintiff has also filed a motion to appoint counsel. (ECF No. 13.) He states that he is "ignorant of all things regarding civil law," and that he received help in preparing his complaint from another prisoner at his last location. (Id. at 1.) He has also been unsuccessful in securing counsel. (Id. at 2.)

The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d

1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335–36 (9th Cir. 1990). The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. See Klein v. Williams, 714 F. App'x 631, 634 (9th Cir. 2017).

In the present case, the court does not find the required exceptional circumstances. First, at this early stage in the litigation when defendants have yet to be served and to file a responsive pleading, the court cannot assess plaintiff's likelihood of success on the merits. Second, plaintiff's claims do not seem complex. The complaint does not appear to make any factual allegations that could give rise to novel questions of law or that would require extensive briefing to resolve plaintiff's claims.

For these reasons, the court will deny plaintiff's motion to appoint counsel, without prejudice to its renewal at a later date.

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. The motion to proceed in forma pauperis (ECF No. 11) is granted.
2. The motion to appoint counsel (ECF No. 13) is denied without prejudice.
3. The complaint (ECF No. 1) states a cognizable excessive force claim against defendants Belluomini, Bargstadt, Branion, Bunch, Castille, Dennis, McElroy, Priest, Purtle, Strope, and Williams, and a cognizable failure-to-intervene claim against defendants Arciga, Abraham, Reyes, Thomas, Farhat, and Sarai.
4. The complaint (ECF No. 1) fails to state any other cognizable claims.
5. Plaintiff may choose to proceed on his cognizable claims set out above or he may choose to amend his complaint.

////

6. Within thirty (30) days of the date of this order plaintiff shall notify the court of how he wishes to proceed. Plaintiff may use the form included with this order for this purpose.

7. Plaintiff is warned that his failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: August 24, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB: 15
DB/DB Prisoner Inbox/Civil Rights/S/mcdo2242.scrn

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| DAMIEN MARSHJON MCDOUGLAND, | No. 2:22-cv-2242 DB P |
|---|---|
| Plaintiff, | |
| v. | NOTICE OF ELECTION |
| J. BELLUOMINI, et al., | |
| Defendants. | |

Check one:

\_\_\_\_\_   Plaintiff wants to proceed immediately on his excessive force claim against defendants Belluomini, Bargstadt, Branion, Bunch, Castille, Dennis, McElroy, Priest, Purtle, Strope, and Williams, and his failure-to-intervene claim against defendants Arciga, Abraham, Reyes, Thomas, Farhat, and Sarai.  Plaintiff understands that by going forward without amending the complaint he is voluntarily dismissing all other claims.

\_\_\_\_\_   Plaintiff wants to amend the complaint.

DATED:_____

                                                                       Damien McDougland
                                                                       Plaintiff pro se